**STATEMENT OF CLAIM**

A.) FEDERAL COURT JURISDICTION

There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

B.) COMPLAINT FOR FOLLOWING CAUSES OF ACTION BY DEFENDANTS':

I.) VIOLATION OF CH 119, 18 USC §2522 Communications Assistance for Law Enforcement Act ("CALEA") under which § 2520 Recovery of civil damages is authorized,

II.)a.  AIDING AND ABETTING under 18 USC § 2, for: 18 USC § 2261A Stalking; 18 USC § 875 Interstate Communication par(c) Threats; and MCL 750.540e Malicious use of service, by:

  b.  OBSTRUCTION OF JUSTICE under 18 USC § 1503, 1505 and 1509 , 18 U.S.C. § 1001(a) Making False Statements, and MCL 750.81d Obstructing Person Performing Duty, denoting:

III.) NEGLIGENCE PER SE rising to GROSS NEGLIGENCE, as a 18 USC § 2 principal in violation of part II statutes above, whose purpose is protection from damages due to:

IV.) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

V.) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

VI.) CONCEALMENT

VII.) DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW, 42 USC §1983


C.) PLAINTIFF ALLEGES, incorporating by reference all following parts, as if fully set forth herein, and to extent necessary, pleads all subsequent causes of action in alternative, that DEFENDANTS VIOLATE:

I.)  18 USC §2522 and § 2520, CALEA, that establishes Defendants' duty as a "Competitive Local Exchange Carrier" ("CLEC") and Voice over Internet Protocol ("VoIP") provider, to comply with Lawful Interception (LI) of end user ("User") retained data ("RD") or Call Detail Records ("CDRs") during the course of a Nov 2018 criminal investigation into anonymous threats by SMS text through Defendants' VoIP network.

Defendants, by correspondence with investigating law enforcement agency ("LEA"), misdirected service of order made in accordance with 18 USC § 2516 & 2518, pursuant, "but not limited to" ,"applicable State statutes," to 3rd party client or affiliate entity, "Burner" DBA Ad Hoc Labs, Inc., an act of affirmative noncompliance.

In other words, Defendants, from whose phone number originated and CDRs are maintained, **are** subject to CALEA compliance as CLEC and VoIP provider, misdirected service of LI order to affiliate mobile application *software company* who are **not** subject CALEA, who merely *resells* Defendant's VoIP phone numbers on their behalf via mobile app platform to User. Both entities refused order.

Defendants, as responsible party for CALEA compliance, misdirected legal service to a non- responsible party, an act that breached duty under CALEA. Under Ch 119 § 2520, pursuant intentional noncompliance with LEA investigation and order for electronic communications, the affirmative act of intentional preservation of anonymity of User, and certain acts described herein, constitute misuse of electronic communications that entitles Plaintiff to enjoin in civil action to "recover from the person or entity,"... "which engaged in that violation such relief as may be appropriate."

II.)   a.) AIDING AND ABETTING under 18 USC § 2. User violates 18 USC § 2261A Stalking; 18 USC § 875 Interstate Communication  para(c) Threats, and MCL 750.540e Malicious use of service.

Defendants Aid and Abet User in commission of these crimes by providing User communications services and acts of:

b.) OBSTRUCTION OF JUSTICE under 18 USC § 1503, 1505 and 1509 , 18 U.S.C. § 1001(a) Making False Statements, and MCL 750.81d Obstructing Person Performing Duty whereby Defendants:

i.)   Claim, in violation of 18 U.S.C. § 1001(a),  "*Bandwidth does not have any end user records to provide or preserve related to your request,*"  in response to Nov 5, 2018  LEA request,

ii.)   Fail to explain, as VoIP source and provider on file per LEA investigation, how they are not obligated under CALEA to comply with that order,  in  18 USC §1503, 1505, 1509 Obstruction of Justice,

iii.)   Misdirect, in violation of 18 U.S.C. § 1503, 1505 and 1509 and 1001(a), LEA legal service to 3rd party not obligated under CALEA, when replying,

*"Therefore, for the number(s) you indicated, for any and all end user information you will need to serve a subpoena/court order/search warrant using the information provided below"*  and provide a non-responsible party's contact information.

iv.)   apparently reverse  claim in  Mar 6, 2020 Response to Plaintiff's Notice,  "*would only provide any available customer information if we receive appropriate legal process, such as a subpoena or a law enforcement reques*t," with no explanation not provided per i.) above, violating 18 USC § 1503, 1505 and 1509

v.) Fail to provide Plaintiff User CDRs, on Notice's request pursuant 18USC §2522 civil claim, as party to conversation under 18 U.S. Code § 2511 (2) sub  para (c).

In short, Defendants committed five distinct acts, listed above, constituting contradictory, misleading or false written statements to LEA and Plaintiff during criminal and civil investigation, succeeding  in LI order being served on wrong party, confounded investigation by exhausting limited LE resources, caused investigation's closure without resolution, and shielded User's crimes from prosecution, thus violating  18 USC § 2 and become the principals in their commission.


III.) NEGLIGENCE PER SE RISING TO GROSS NEGLIGENCE

1. Defendant, an 18 USC § 2 principal per part II above, violates:

2A.)  18 USC § 2261A Stalking, stating "whoever--

(1) (A)places that **person in reasonable fear of the death of, or serious bodily injury to—(i)that person; (ii) an immediate family member (as defined in section 115) of that person;  (iii)a spouse or intimate  partner of that person; or**
  (B) causes, attempts to cause, or **would be reasonably expected to cause** substantial emotional distress  to a person described in clause (i), (ii), or (iii) of subparagraph (A); or
(2)  with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
  (A) places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv)

        of paragraph (1)(A); or
        (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A)," [my emphasis]

  B.) 18 USC § 875 Interstate Communication, Threats in para(c) "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any **threat to injure the person of another,**" [my emphasis]

  C.) MCL 750.540e Malicious use of service, "A person is guilty of a misdemeanor who maliciously uses any service provided by a telecommunications service provider with intent to **terrorize, frighten, intimidate, threaten, harass, molest, or annoy another person, or to disturb the peace and quiet of another person.**" [my emphasis]

  D.) 18 USC §2522 CALEA's purpose in its own words, is "to make clear a telecommunications carrier's duty to cooperate in the interception of communications for Law Enforcement purposes."

3.) Plaintiff is a "person" as defined by those statutory guidelines and language for whose protection the statute, ordinance or regulation was adopted,

4A.) Whereby User communication reasonably constitutes a credible threat, stating
   i.) Plaintiff's "family could easily have been poisoned," and by inference, the Plaintiff,
   ii.) Indication of sophistication in either surveillance or stalking, in stating wholly private details (ie., where Plaintiff traveled, specific restaurant Plaintiff, Plaintiff's intimate partner and family ate, indicating time and date they were there, knowledge of Plaintiff's intimate partner, none of which was published, broadcast or made otherwise public knowledge,
   iii.) Days after the Pittsburgh Synagogue shooting, which User referenced, in relation to Plaintiff's prior federal case regarding religiously motivated incitement of violence, and in turn Plaintiff's ethnicity, thus:

  B.) i.) Places Plaintiff in reasonable fear of the death of, or serious bodily injury to Plaintiff, Plaintiff 's immediate family member and intimate partner, and
    ii.) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress

  C.) Whose threat's credibility, and therefore resulting emotional damages, are enhanced, in that Plaintiff and Plaintiff's prior case:

   i.) Focuses on religiously motivated violence in Islam,
   ii.) Are published in a list by a 57 member state Organization for Islamic Cooperation (OIC) as "Islamophobic,"
   iii.) That could be construed as criticism of Islam,
   iv.) Whose religious texts contain certain verses prescribing violent acts or death for those that criticize Islam,
   v.) With a world-wide body of adherents sufficiently large enough that subscribe to such beliefs to the degree they would act upon them, and therefore constitutes a non-zero probability,
   vi.) As demonstrated by violent public acts such as dismemberment of Washington Post journalist Jamal Khashoggi, whose OIC members(s) are allegedly responsible.

5.) As a direct, proximate, immediate and foreseeable result of Defendants' conduct, Plaintiff has/will suffer economic and non-economic damages including but not limited to:

  (a) Terror, fright, intimidation and other injuries to their physical, mental, emotional and nervous systems;
  (b) Severe mental anguish and psychological distress;

    (c) Past, present and future cost of medical care, including but not limited to therapy and psychological counseling; and
    (d) home surveillance, home defense , and protective training measures,

all in an amount not yet ascertained but which exceeds the minimum jurisdictional limits of this Court.

6.) Giving rise GROSS NEGLIGENCE, whereby AIDING and ABETTING and associated acts as laid out in part II of this complaint, denote "voluntary act," and Black's Law Dictionary defines as "a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party,"

IV.) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS by
- i.) Extreme and outrageous conduct by Defendant directed at Plaintiff, when
    1. After the harm effects of User's conduct on Plaintiff were made known to the Defendant by Plaintiff's Notice,
    2. After User's criminal acts made known to Defendant by LEA request and Plaintiff's Notice,
    3. Defendants engaged in actions that constitute AIDING AND ABETTING under 18 USC § 2 per part II. of this Complaint,
    4. Defendants' knowledge that User's violation of Defendant's Acceptable Use Policy ("AUP"), constituted User's affirmative consent, which 18 U.S. Code § 2511 (2) sub para (c) absolved any legal or contractual duty by Defendant to maintain User confidentiality
    5. That 18 U.S. Code § 2511 (2) sub para (c) permitted lawful disclosure to Plaintiff as requested per Notice "where such person is a party to the communication" or one of the parties to the communication has given prior consent to such interception.
    6. It is asserted that Defendants' conduct, under full knowledge of the above statutes and the harm resulting from Defendants' actions, was therefore extreme, outrageous and unreasonable.
- ii.) Denoting intent, by virtue of the fact Defendant was duly notified by LEA request and Plaintiff's Notice,
- iii.) Or recklessness, by knowledge Defendant's actions on Plaintiff by the same,
- iv.) To cause severe emotional distress resulting in physical manifestations including but not limited to headaches, lack of appetite and insomnia, physical pain, emotional anguish, fear, persistent anxiety and paranoia, other physical and emotional injuries, both economic and non-economic damages in the past, present and future, for which this claim is made. The injuries suffered by Plaintiff are substantial and continuing, for the duration from the point the threats were made and stalking indicated, until present, to the degree that that no reasonable person should have to endure it.

V. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
- i.) Plaintiffs reallege and incorporate by reference those paragraphs set forth above as if fully set forth herein.
- ii.) Defendants' owed a duty to Plaintiffs to act as reasonable, prudent persons. This duty includes an obligation to act in a careful, lawful, and prudent manner and in full compliance with applicable federal and law, per Complaint parts C.I-II.
- iii.) Defendants' conduct toward Plaintiffs resulted in a breach of Defendants' duties to act as reasonable, prudent persons.
- iv.) Emotional distress was a field of danger Defendants should reasonably have anticipated and guarded against.
- v.) As a result of Defendants' breach of duties, Plaintiffs suffered legally compensable emotional distress damages as described in Complaint part IV.

VI.) CONCEALMENT, where Defendants
- (1) Owe Plaintiff duty as party to communication with User through Defendant's services, thus, subject to provisions of Defendant's AUP, and to operate under federal law identified in Complaint part C.
- (2) Concealed or suppressed a material fact
    1. In willful preservation of User confidentiality, by failing to disclose relevant User RD and CDR

1. when requested by LEA and refused
2. by stating they had no access to User records, CDR and RD contained by any VoIP provider
3. by misdirecting LEA legal service to 3rd party reseller of Defendant's services
4. when requested by Plaintiff, stating CPNI could not be released to Plaintiff, contrary to
    1. AUP prohibited use provision constituting affirmative release of CPNI
    2. CFR § 64.2005 (d)
    3. § 64.2007 (a) and

(3) had knowledge of this material fact;

(4) that this material fact was not within reasonably diligent attention, observation, and judgment of LEA or Plaintiff;

(5) that Defendant suppressed or concealed this fact with the intention that LEA and Plaintiff be misled

(6) that LEA and Plaintiff was reasonably so misled; and

(7) that Plaintiff suffered damage as a result.

VII.) DEPRIVATION OF RIGHTS UNDER COLOR OF LAW, 42 USC §1983:

1.) Which "provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2.) Who under color of "federal laws governing CPNI"

   A.) Falsely claim in a Mar 6, 2020 Response to Plaintiff's Notice that "we cannot release any customer information without appropriate legal process *due to a variety of laws, including federal laws governing CPNI (Customer Proprietary Network Information),*"

   B.) In direct contradiction to lawful disclosure under:

   1. CFR § 64.2005 (d) "A telecommunications carrier may use, disclose, or permit access to CPNI to protect the rights or property of the carrier, o**r to protect users of those services and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, such services,**" [my emphasis]

   2. 18 USC § 2511 (2) subpara(c), "**where such person is a party to the communication** or one of the parties to the communication has given prior consent to such interception," [my emphasis]

   3. 18 USC Ch. 121, §2702 (b) Exceptions for disclosure of communications.—A provider described in subsection (a) may divulge the contents of a communication—1) to an addressee o**r intended recipient of such communication** or an agent of such addressee or intended recipient; or 3) with the lawful consent of the originator or an addressee or intended recipient of such communication, [my emphasis]

   4. Defendants' Acceptable Use Policy ("AUP") in which User provides default consent by contractual agreement for Defendant to:

      "*provide requested information to third parties who have provided notice to Bandwidth stating that they have been harmed by a User's failure to abide by this Policy*", " to include "engaging in threatening, abusive, harassing,"…"behavior."

      Plaintiff provided such notice to Defendant on Mar 2, 2020,

   C.) Notwithstanding appropriate legal process attempted and misdirected by Defendant per Complaint parts CI-V,

   D.) Under breach of Duty of Care owed Plaintiff as a party to the communications propagated by its services,

   E.) Deprive Plaintiff of First Amendment Right to Petition for Redress by inducing chill-effect injury per part CIII,

1. as it would be by reasonable inference to conclude, based on hostile verbiage and content of message relating to Plaintiff's prior case, that message indicated threat of harm, bodily injury or death of Plaintiff, Plaintiff's immediate family, contingent upon Plaintiff's further legal action related to referenced case,

2. where before threat, Plaintiff took actions to move prior case forward,

3.) and as a direct result of threat issued by User, exercised prudent caution under sufficient credibility of threat, sustained and aided by direct actions of Defendant, to discontinue further pursuit of federal case 17-cv-10517 and thus deprive Plaintiff 's right of petition for redress in prior case.

In short, without Defendant's willful and unlawful actions and omissions, User's crimes are not prosecuted, fulfilling User's intent of instilling and preserving fear-based and chill-effect injuries of Plaintiff to this day.  Because Defendants' are directly responsible for the closure of the criminal investigation and User's prosecution, any reasonable person would not feel safe to pursue any further work on that prior case, and legitimately so. The Defendant's conscious choice proximately instills legitimate and objective fear to pursue further litigation and therefore deprives the Plaintiff a fundamental First Amendment civil right which any American citizen should enjoy.

**RELIEF**

Plaintiff pleas for judgment against Defendants as follows:

1. For general damages in a just and reasonable amount in excess of the jurisdictional minimum of this court;

2. For statutory damages and civil penalties as provided by law;

3. For compensatory damages resulting from infliction of ongoing emotional distress and fear-based injury;

4. For punitive and exemplary damages in consideration of following Justification;

5. For Pro Se litigant costs in consideration of equivalent attorney fees and opportunity cost, and other costs of said suit;

6. For such other and further relief as the Court deems just and proper.

**Punitive and Exemplary Damage with Multiplier Justification**

1.) Plaintiff requests Court's consideration of sufficient punitive damages to induce Defendant's and potentially similar parties' reasonable cooperation, whether with any future aggrieved party or LEA, to dissuade further unlawful conduct by Defendants or other VoIP provider who may similarly profit from anonymous and untraceable communication.

   A.) Defendants distribute VoIP services through 3rd party companies, in this case,"Burner" a name "referencing so-called 'burner phones, prepaid mobile phones that are replaced frequently" … "used in popular culture by drug dealers on The Wire and Breaking Bad, spies on Burn Notice, and agents in Mission: Impossible," according to the company's Wikipedia page. This implies guaranteed anonymity is is a key part of their business, and thus financially advantageous to preserve any User's anonymity in any circumstance, regardless to the harm that may cause others.

   B.) Any public institution, from judicial to legislative, whether a jury member or policymaker, at the municipal to federal level are similarly vulnerable to anonymous threats, harassment and coercion, which are credible when investigation and prosecution are prevented by such willful and unlawful preservation of User anonymity.

   The Court may consider "Election officials in several key battleground states that decided the Presidential election are facing violent threats as a result of disinformation about their states," according to a PBS Frontline investigation, an attempt to coerce and usurp the results of a democratic election.

   Any VoIP source company like Bandwidth has incentive to maintain their end user's anonymity. Therefore, in consideration of that, I would ask the court to eliminate that incentive by imposing sufficient punitive damages on Defendants in this case.

2.) A.) Under 18 USC §2522, in determining equivalent scale for fair punitive or exemplary damages, "a court may impose a civil penalty of up to $10,000 per day for each day in violation after the issuance of the order or after such future date as the court may specify."

   B.) Under 18 USC § 2520 (c)Computation of Damages (2)(B) Statutory damages of $100 a day

3.) That Gross Negligence and Intentional Infliction of Emotional Distress through Defendants' misconduct justifies a multiplier to punitive and exemplary damages. Defendants' conduct was despicable and was committed maliciously,

fraudulently and/or oppressively with the wrongful intention a willful and conscious disregard of the rights of Plaintiff, justifying an award of punitive damages.

4.) Compensatory damages resulting from infliction of ongoing emotional distress and fear-based injury:

As each state's laws on infliction of emotional distress vary, I request Court consider Michigan case law for comparative relief in Hackler v. Austin [17-0137-NO, Macomb County Circuit Court (2017)], whereby the Plaintiff was awarded $600,000 for invasion of privacy through intrusion upon seclusion and infliction of emotional distress. Therefore we request as remedy for ongoing infliction of emotional distress no less than a similar judgment of $600,000.

5) Plaintiff requests Court's consideration of Deprivation of Civil Rights under Color of Law as a compounding factor in determination of punitive damages in the following section.

6.) Punitive damages for *especially egregious conduct* as set forth in TXO Production Corp. v. Alliance Resources Corp., 509 US 443, 1993:

Normally in awarding punitive damages, the Supreme Court applies the rule of proportionality to avoid arbitrary deprivation of property under the due process of law clauses of the Fifth and Fourteenth Amendments. However, the Supreme Court affirmed in the TXO case that disproportionate punitive damages are allowed for *especially egregious conduct*, where it affirmed an award of $10 million in punitive damages, despite the compensatory damages being only $19,000, a punitive-to-compensatory ratio of more than 526 to 1. Turning to the facts of this case, the court stated that the application of its "reasonable relationship" test required it to consider these three factors [187 W. Va., at 476, 419 S. E. 2d, at 889.]

(1) the potential harm that [the defendants'] actions could have caused;
(2) the maliciousness of [the defendants'] actions; and
(3) the penalty necessary to discourage [the defendants'] from undertaking such endeavors in the future.

Ross Levay, Plaintiff
November 27, 2020